## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**SIMON SHOKR**                                                   **CIVIL ACTION**

**VERSUS**                                                          **NO. 21-319**

**DARREL VANNOY**                                          **SECTION: "B"(3)**

### REPORT AND RECOMMENDATION

Petitioner, Simon Shokr, a Louisiana state prisoner, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that his application be **DISMISSED WITH PREJUDICE**.

On March 4, 2016, petitioner was convicted under Louisiana law of the following crimes: aggravated rape of a minor under the age of thirteen (Count 1); sexual battery upon a minor under the age of thirteen (Count 2); and indecent behavior with a juvenile (Count 3).[1] On March 23, 2016, he was sentenced to the following terms of imprisonment: life on Count 1; fifty years on Count 2; and seven years on Count 3. It was ordered that his sentences be served consecutively and that the sentences on Counts 1 and 2 be served without benefit of parole, probation, or suspension of sentence.[2] On February 8, 2017, the Louisiana Fifth Circuit Court of Appeal affirmed his convictions, amended his sentences on Counts 1 and 2 to delete additional fines which had been imposed, affirmed those two sentences as amended, and affirmed his sentence on Count 3.[3] The Louisiana Supreme Court then denied his related writ application on December 15, 2017.[4]

---

[1] State Rec., Vol. 7 of 12, transcript of March 4, 2016, p. 468; State Rec., Vol. 1 of 12, minute entry dated March 4, 2016; State Rec., Vol. 1 of 12, jury verdict forms.
[2] State Rec., Vol. 7 of 12, transcript of March 23, 2016; State Rec., Vol. 1 of 12, minute entry dated March 23, 2016.
[3] State v. Shokr, 212 So. 3d 1212 (La. App. 5th Cir. 2017); State Rec., Vol. 2 of 12.
[4] State v. Shokr, 231 So. 3d 638 (La. 2017); State Rec., Vol. 2 of 12.

On June 29, 2018, petitioner filed a *pro se* application for post-conviction relief with the state district court,[5] which he later supplemented on August 6, 2018.[6]  The district court denied post-conviction relief on July 9, 2018,[7] August 13, 2018,[8] and October 4, 2018.[9]  His related writ applications were then denied by the Louisiana Fifth Circuit Court of Appeal on January 14, 2019,[10] and by the Louisiana Supreme Court on October 1, 2019.[11]

On October 8, 2019, petitioner, through counsel, filed with the state district court a "Motion for Forensic DNA Testing."[12]  That motion was denied on October 11, 2019.[13]

On or after January 10, 2021, petitioner filed the instant federal application seeking habeas corpus relief.[14]  The state filed a response arguing that the application should be dismissed as untimely.[15]  Petitioner filed a reply,[16] and then he also filed what appeared to be a supplement or amendment to his federal application.[17]  For the following reasons, the application is indeed untimely.

---

[5] State Rec., Vol. 2 of 12.  Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing by a *pro se* prisoner, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system."  Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). Because that date cannot be gleaned from the state court record with respect to the post-conviction application, the Court has simply used the signature date of the pleading as its filing date, in that the pleading was obviously placed in the mail no earlier than the date on which it was signed.  See United States v. Minor, 582 F. App'x 315, 316 (5th Cir. 2014); Estes v. Boutté, Civ. Action No. 19-2289, 2020 WL 1990823, at *2 (E.D. La. Mar. 6, 2020), adopted, 2020 WL 1984331 (E.D. La. Apr. 27, 2020); Crochet v. Goodwin, Civ. Action No. 13-3106, 2014 WL 5093995, at *2 n.10 (E.D. La. Oct. 8, 2014); Thornton v. Terrell, Civ. Action No. 09-1631, 2009 WL 4855743, at *1 n.1 (E.D. La. Dec. 4, 2009).
[6] State Rec., Vol. 3 of 12.
[7] State Rec., Vol. 3 of 12, Order dated July 9, 2018.
[8] State Rec., Vol. 3 of 12, Order dated August 13, 2018.
[9] State Rec., Vol. 3 of 12, Order dated October 4, 2018.
[10] Shokr v. Vannoy, No. 18-KH-586 (La. App. 5th Cir. Jan. 14, 2019); State Rec., Vol. 3 of 12.
[11] Shokr v. Vannoy, 280 So. 3d 133 (La. 2019); State Rec., Vol. 3 of 12.
[12] State Rec., Vol. 3 of 12.
[13] State Rec., Vol. 3 of 12, Order dated October 11, 2019.
[14] Rec. Doc. 4.
[15] Rec. Doc. 9.
[16] Rec. Doc. 11.
[17] Rec. Doc. 12.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a statute of limitations for petitioners seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Specifically, the AEDPA provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Subsections B, C, and D of 28 U.S.C. § 2244(d)(1) clearly do not apply in the instant case because petitioner does not allege the existence of a state-created impediment, a newly recognized constitutional right, or a newly discovered factual predicate. Accordingly, Subsection A is controlling.

Regarding Subsection A, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued

relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

Because the Louisiana Supreme Court denied petitioner's direct-review writ application on December 15, 2017,[18] his state criminal judgment therefore became final for federal purposes on **March 15, 2018**.  Accordingly, in order to be timely, his federal application had to be filed within one year of that date, unless that deadline was extended through tolling.

The Court first considers statutory tolling.  Regarding the limitations period set forth in § 2244(d)(1), federal law provides:  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).

After one hundred five (105) days elapsed, petitioner tolled the federal limitations period in the instant case by filing a post-conviction application with the state district court on June 29, 2018.  Although the district court denied relief, the application nevertheless remained "pending" for the purposes of § 2244(d)(2) for the duration of the post-conviction proceedings if petitioner continued to seek review at the higher levels of the state court system in a timely manner.  Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004).  Here, the state does not challenge the timeliness of petitioner's related filings and, in fact, concedes that the limitations

---

[18] State v. Shokr, 231 So. 3d 638 (La. 2017); State Rec., Vol. 2 of 12.

period remained tolled until the Louisiana Supreme Court ultimately denied relief on October 1, 2019.[19]

At that point, the limitations period resumed running and another six (6) days then elapsed before it was tolled once again by the filing of the "Motion for Forensic DNA Testing" on October 8, 2019.[20]  Although the state district court denied that motion on October 11, 2019, petitioner then had thirty days to challenge that denial by filing a related writ application with the Louisiana Fifth Circuit Court of Appeal.  See Louisiana Uniform Rules of the Courts of Appeal Rule 4-3; see also Melancon v. Kaylo, 259 F.3d 401, 404-06 (5th Cir. 2001); Campbell v. Cain, Civ. Action No. 06-3983, 2007 WL 2363149, at *3 & n.24 (E.D. La. Aug. 15, 2007).  Because he filed no such writ application, the motion ceased to be "pending" – and tolling based on that motion ended – when that thirty-day deadline expired on November 12, 2019.[21]  See Grillette, 372 F.3d at 769-71 (a state post-conviction application ceases to be pending for tolling purposes when the time for seeking supervisory review expires).

---

[19] See Rec. Doc. 9, p. 9.  A petitioner receives no additional tolling credit for the period during which he could have sought review by the United States Supreme Court with respect to the denial of post-conviction relief.  Lawrence v. Florida, 549 U.S. 327, 332 (2007); Ott v. Johnson, 192 F.3d 510, 512-13 (5th Cir. 1999).

[20] State Rec., Vol. 3 of 12.  The United States Fifth Circuit Court of Appeals has held that "a motion to test DNA evidence under Texas Code of Criminal Procedure article 64 constitutes 'other collateral review' and thus tolls the AEDPA's one-year limitations period under 28 U.S.C. § 2244(d)(1)."  Hutson v. Quarterman, 508 F.3d 236, 240 (5th Cir. 2007).  In reaching that conclusion, the Fifth Circuit reasoned that such a motion filed in a Texas state court seeks "to challenge that judgment by potentially requiring that the trial court hold a hearing to determine whether it was reasonably probable that the convicted person would have been acquitted given the DNA results"; therefore, such a motion is by its very nature "a request for 'review' of the judgment pursuant to which [the petitioner] is incarcerated."  Id. at 239.  Because petitioner's federal application is untimely regardless, this Court will assume that the same is true of a similar motion filed under Louisiana law and simply toll the limitations period while petitioner's motion was pending.  See, e.g., Ross v. Goodwin, Civ. Action No. 19-13970, 2021 WL 2143700, at *4 n.31 (E.D. La. Apr. 29, 2021), adopted, 2021 WL 2142498 (E.D. La. May 26, 2021).

[21] In this case, the thirtieth day of the period fell on a Sunday, and the following Monday was a holiday (Veterans Day); therefore, petitioner had until Tuesday, November 12, 2019, to file a writ application with the Louisiana Fifth Circuit Court of Appeal.  See La. Code Crim. P. art. 13; La. Rev. Stat. Ann. § 1:55.

When the one-year federal limitations period once again resumed running at that point, one hundred eleven (111) days had already elapsed, leaving petitioner with two hundred fifty-four (254) days remaining.  Accordingly, he had until **July 23, 2020**, either to file his federal application or, alternatively, to again toll the limitations period.

The initial question, therefore, is whether petitioner filed a federal application on or before that deadline.  That question turns on whether he filed one or two such applications.

That he filed the instant petition is clear.  It is also clear that this petition was not filed by that deadline.  Where, as here, a prisoner files a *pro se* habeas application, his application "is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  It is indisputable that the instant petition was not filed on or before July 23, 2020, in that was not even signed until January 10, 2021.  Moreover, it was mailed in an envelope bearing a metered postage label dated February 8, 2021, and was actually received by this Court for filing on February 11, 2021.

However, a critical issue here is whether petitioner had filed a **prior** habeas application before the deadline expired on July 23, 2020.  In his instant application, he alleged that he had in fact initially filed a habeas application with this Court on November 12, 2019, but received no response to that filing.[22]  He further attached a copy of the purported application to the instant filing.[23]  The Court is unconvinced for the following reasons.

First, this Court never received that purported filing.

---

[22] Rec. Doc. 4, p. 13.
[23] Rec. Doc. 4-2.

Second, other than his own statement, petitioner has not submitted any evidence whatsoever that such an application was in fact filed. That is problematic, because courts rarely accept such assertions concerning unreceived purported filings unless some such supporting evidence is produced. See, e.g., Washington v. Ollison, No. C 06-4490, 2007 WL 1378013, at *3 n.3 (N.D. Cal. May 9, 2007) (prisoner presented several forms of evidence substantiating his claim that he had in fact mailed his petition on time); see also Chapman v. Ricks, No. 9:03-CV-0171, 2008 WL 820189, at *8 (N.D.N.Y. Mar. 26, 2008) (accepting similar assertion because "Petitioner's claim is not simply a bald accusation. He has presented evidence to support his claim.").

Here, petitioner merely contends that he deposited the application into the prison's "internal mail system for electronic filing by the Legal Programs Department" on November 12, 2019. However, he has not provided the Court with a receipt from the Legal Programs Department confirming the electronic filing – or, for that matter, **any other evidence** from that department confirming that he submitted such a document for electronic filing. As the United States Supreme Court has noted, prison authorities normally "have well-developed procedures for recording the date and time at which they receive papers for mailing" and so "reference to prison mail logs will generally be a straightforward inquiry." That petitioner has offered no such evidence – or, alternatively, evidence that such records are not kept at the Louisiana State Penitentiary[24] – is telling.

---

[24] There is reason to believe that such records would in fact exist, because it has been established in past cases that the Louisiana State Penitentiary maintains a log of all legal mail electronically filed with the federal district courts in this state. See, e.g., Trice v. Vannoy, Civ. Action No. 19-10787, p. 3 (E.D. La. Apr. 28, 2021) (Report and Recommendation adopted by Lemmon, J., on May 21, 2021); Videau v. Vannoy, Civ. Action No. 18-4774, p. 3 (E.D. La. Apr. 5, 2021) (Report and Recommendation adopted by Feldman, J., on May 3, 2021).

Third, if petitioner had in fact submitted such a filing in November 12, 2019, but received no acknowledgement or response whatsoever thereto, he has curiously failed to offer any explanation as to why then he made no inquiries as to the status of that filing for more than a year thereafter.

In conclusion, petitioner has offered **nothing** other than his own statement that a prior habeas application was filed before the limitations period expired.  That alone simply will not suffice.  A petitioner cannot overcome a limitations defense merely by stating, without any supporting evidence whatsoever, that he filed an application years earlier which inexplicably was never received and of which no proof exists.  The statute of limitations would be rendered meaningless if it could be avoided by offering nothing more than unsupported and self-serving statements of attempts to file within the limitations.  See, e.g., Johnson v. United States, No. 10-CV-341, 2010 WL 2490694, at *3 (E.D. Wis. June 17, 2010) ("As a general rule, the 'they lost my mail argument' typically will not succeed, for filing deadlines would become meaningless if a mere affidavit stating that a motion was timely filed, but was evidently lost in the mail, was all that was needed to excuse an untimely filing." (citation omitted)).

Because petitioner has offered no colorable proof that a prior federal application was filed before July 23, 2020, and because the instant application was obviously filed after that date, his application is untimely unless he can establish that the limitations period was further tolled.

Clearly, petitioner is not entitled to any further **statutory** tolling, because he had no other applications for post-conviction or collateral review pending in the state courts at any time on or before July 23, 2020.

However, the Court must also consider **equitable** tolling.  The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010).  Nonetheless, it is clear that "equitable tolling is unavailable in most cases …." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations may be equitably tolled "in rare and exceptional circumstances").  Indeed, the Supreme Court held that "a petitioner is entitled to equitable tolling only if he shows both that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649 (internal quotation marks omitted).  Petitioner bears the burden of proof to establish entitlement to equitable tolling.  Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002).

In the instant case, although petitioner does not expressly argue that he is entitled to equitable tolling, the Court notes that he does appear to argue that his application should be considered timely under the rules announced in Martinez v. Ryan, 566 U.S. 1 (2012), and Trevino v. Thaler, 569 U.S. 413 (2013).[25]  If he is contending that Martinez and Trevino support a bid for equitable tolling – or in any other way affect the timeliness of a federal application – that contention is incorrect:

> Martinez and Trevino dealt with the procedural default doctrine.  In Martinez, the Supreme Court held:  "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Martinez, 132 S.Ct. at 1320.  In Trevino, the Supreme Court held that the Martinez exception also applies when a "state procedural framework, by reason of its design and operation, makes

---

[25] See Rec. Doc. 4, p. 14; Rec. Doc. 11, p. 2.

it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." Trevino, 133 S.Ct. at 1921.  Because Martinez and Trevino concerned the procedural default doctrine, *not* the AEDPA's statute of limitations, they are inapplicable here and do not excuse petitioner's failure to seek federal relief in a timely manner.  See, e.g., Henschen v. Secretary, Florida Department of Corrections, No. 3:12cv571, 2013 WL 6816093, at *5 (N.D. Fla. Dec. 24, 2013); Oxley v. Cain, Civ. Action No. 11-669, 2013 WL 5238297, at *2 (M.D. La. Sept. 17, 2013); Kuykendall v. Stephens, Civ. Action No. 13-CV-248, 2013 WL 3455724, at *3 (N.D. Tex. July 9, 2013).

Falls v. Cain, Civ. Action No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. June 13, 2014); accord Arthur v. Thomas, 739 F.3d 611, 631 (11th Cir. 2014) ("[T]he reasoning of the Martinez rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); Fontenelle v. Narcisse, Civ. Action No. 21-388, 2021 WL 5418125, at *11 (E.D. La. Sept. 28, 2021) ("The United States Supreme Court's holdings in Martinez v. Ryan and Trevino v. Thaler and their progeny, simply do not provide a basis for review of [a petitioner's] untimely filed federal petition. … Neither Martinez nor Trevino addresses or excuses the untimely filing of a federal habeas petition." (footnotes omitted)), adopted, 2021 WL 5415844 (E.D. La. Nov. 19, 2021); Lyles v. Tanner, Civ. Action No. 13-655, 2014 WL 4674673, at *1 (E.D. La. Sept. 17, 2014) ("[Martinez and Thaler] arise in the context of the **procedural** default doctrine, **not** equitable tolling of the AEDPA's statute of limitations.  Thus, these cases are inapplicable in this instance and do not excuse petitioner's failure to seek federal relief in a timely manner.").

Because Martinez and Thaler are inapplicable to equitable tolling, and because petitioner has asserted no other basis for such tolling, he has not met his burden to show that equitable tolling is warranted in this case.

Finally, the Court notes that a petitioner can overcome the AEDPA's statute of limitations by making a convincing claim of "actual innocence" under McQuiggin v. Perkins, 569 U.S. 383 (2013). In Perkins, the United States Supreme Court held:

> This case concerns the "actual innocence" gateway to federal habeas review applied in Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), and further explained in House v. Bell, 547 U.S. 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006). In those cases, a convincing showing of actual innocence enabled habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims. Here, the question arises in the context of 28 U.S.C. § 2244(d)(1), the statute of limitations on federal habeas petitions prescribed in the Antiterrorism and Effective Death Penalty Act of 1996. Specifically, ... can the time bar be overcome by a convincing showing that [the petitioner] committed no crime?
>
> We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup and House, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup, 513 U.S., at 329, 115 S.Ct. 851; see House, 547 U.S., at 538, 126 S.Ct. 2064 (emphasizing that the Schlup standard is "demanding" and seldom met).

Perkins, 569 U.S. at 386.

In the instant case, petitioner has not invoked Perkins. However, in the event he does so in any objections to this Report and Recommendation, the undersigned finds that he has not made the showing required under Perkins for the following reasons.

Regarding the crimes of which petitioner stands convicted, the Louisiana Fifth Circuit Court of Appeal explained:

> Defendant was convicted of aggravated rape, sexual battery and indecent behavior with a juvenile. At the time of the offense, aggravated rape was defined, in pertinent part, as "a rape committed ... where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed .... [w]hen the victim is under the age of thirteen years." La. R.S. 14:42(A)(4). When the rape involves vaginal or anal intercourse, any penetration,

11

however slight, is sufficient to complete the crime.  La. R.S. 14:41(B).  Oral sexual intercourse is defined as:

> (1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender.
> (2) The touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim.

La. R.S. 14:41(C).

At the time of the offense, sexual battery was defined, in pertinent part, as the intentional touching of the anus or genitals of the victim by the offender or of the offender by the victim using any instrumentality or any part of the body of the offender or the victim without the victim's consent or when the victim is not the spouse of the offender, is under the age of 15, and is at least three years younger than the offender.  La. R.S. 14:43.1(A).  In this case, Defendant was specifically charged with sexual battery of a minor under the age of 13.[FN 3]

> [FN 3]  This specific age element is strictly for the harsher sentencing provision under La. R.S. 14:43.1(C)(2).

Indecent behavior with a juvenile is defined, in pertinent part, as the commission of any "lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons" "with the intention of arousing or gratifying the sexual desires of either person."  La. R.S. 14:81(A)(1).  A lewd or lascivious act has been defined as "one which tends to excite lust and to deprave the moral with respect to sexual relations and which is obscene, indecent, and related to sexual impurity or incontinence carried on in a wanton manner."  State v. Lande, 06-24 (La.App. 5 Cir. 6/28/06); 934 So.2d 280, 291, writ denied, 06-1894 (La. 4/20/07); 954 So.2d 154.  Additionally, the statute's definition of a lewd and lascivious act "encompasses not only the physical touching of the victim in an indecent manner, but also 'indecent sexual displays in the presence of children under the age of seventeen.'"  State v. Interiano, 03-1760 (La. 2/13/04); 868 So.2d 9, 15.

Indecent behavior with a juvenile is a specific intent crime for which the State must prove the offender's intent to arouse or gratify his sexual desires by his actions involving a child.  State v. Borden, 07-396 (La.App. 5 Cir. 5/27/08); 986 So.2d 158, 166.  Specific intent to commit indecent behavior with a juvenile need not be proven as fact, but may be inferred from the circumstances and actions of the defendant.  State v. Domangue, 12-760 (La.App. 5 Cir. 5/23/13); 119 So.3d 690, 696. [26]

---

[26] State v. Shokr, 212 So. 3d 1212, 1216 (La. App. 5th Cir. 2017); State Rec., Vol. 2 of 12.

In assessing a claim of actual innocence, a court normally first examines the evidence presented at trial and on which the petitioner's convictions were based.  See, e.g., Johnson v. Cain, Civ. Action No. 14-543, 2015 WL 4528889, at *3 (E.D. La. July 27, 2015), aff'd, 667 F. App'x 474 (5th Cir. 2016); Lyles v. Tanner, Civ. Action No. 13-655, 2014 WL 4674673, at *6 (E.D. La. Sept. 17, 2014).  In the instant case, the Louisiana Fifth Circuit Court of Appeal summarized that evidence in this case as follows:

> S.K.[FN 2] was two years old when her parents divorced in 2001.  In the same year, her mother, H.K., started dating Defendant and the two moved in together.  In 2005, H.K. and Defendant had a son.  In October 2012, H.K. and Defendant split up, but remained friends for the sake of their son.  About one week after H.K. and  Defendant split up, S.K., who was in eighth grade at the time, confided in her mother that Defendant was doing inappropriate things to her, but she did not elaborate as to what exactly had happened.  H.K. testified that she took no action because she was in denial.  A few days later, the Department of Child and Family Services and then the Jefferson Parish Sheriff's Office contacted H.K. regarding S.K.'s sex abuse allegations.

>> [FN 2]  The victim and any witness whose name can lead to the victim's identity, i.e., parent, sibling, or relative with the same last name as the victim, are identified by initials under the authority of La. R.S. 46:1844(W)(1)(a), which protects the identity of minor victims of sex offenses.

> S.K. testified at trial that Defendant, who was a father figure to her when she was young, started abusing her sometime between second and fourth grade.  She testified that Defendant touched her and did inappropriate things to her in her bedroom on many occasions.  She explained that Defendant routinely came into her room, multiple times a week, when her mother was sleeping and would touch her breasts with his hands or touch her vagina.  S.K. stated that Defendant would make her put her mouth on his penis and he would sometimes put his mouth on her breasts and vagina.  She indicated that Defendant would kiss her and put his tongue in her mouth.  She further testified that "one time he stuck his penis in [her] butt, the tip of it, and it hurt."  S.K. stated that Defendant threatened to kill her with a knife from their kitchen if she told anyone.

> S.K. testified that she first disclosed the abuse to two of her friends when she was in seventh grade, but did not tell any adults because she knew "something bad would happen if [she] told."  When she was in eighth grade, she confided in her boyfriend, who encouraged her to tell her mother about the abuse.  Thereafter, S.K. told her mother that Defendant was doing inappropriate things to her.  She then told two of her friends at school about the abuse.

At some point, S.K. was called into the school counselor's office and questioned about the abuse. S.K. then spoke to the Department of Family Services, which contacted the Jefferson Parish Sheriff's Office (JPSO). S.K. was subsequently interviewed at the Child Advocacy Center (CAC) and examined by Anne Troy, a nurse practitioner, at Children's Hospital. S.K.'s trial testimony was consistent with the information she relayed about the sexual abuse during the CAC interview and the history she gave to Ms. Troy during her examination.

After speaking with S.K. after her CAC interview, the JPSO issued an arrest warrant for Defendant, and he was arrested on November 8, 2012. Defendant testified at trial and denied molesting S.K. He explained that when he returned from a business trip to Australia, his relationship with H.K. was not very good and he was concerned with H.K.'s relationship with her former husband, S.K.'s father. Defendant testified that he thought S.K. was lying about the abuse so she could get him out of her life and get her father back.[27]

In explaining that the evidence at trial was sufficient to support petitioner's convictions, the Louisiana Fifth Circuit Court of Appeal observed:

In the present case, S.K.'s testimony establishes each element of the three offenses for which Defendant was convicted. She testified as to acts committed by Defendant that constitute anal and oral sexual intercourse. She also testified about Defendant touching her breasts and vagina with his hands and making her touch his penis with her hand, all of which constitute sexual battery. See State v. Perkins, 11-162 (La.App. 5 Cir. 12/28/11); 83 So.3d 250, 257, where this Court found that the victim's testimony that the defendant had touched and rubbed her vagina with his hand was sufficient to sustain a conviction for sexual battery. S.K. further testified that on other occasions Defendant rubbed his exposed penis in her presence, and that he kissed her and put his tongue in her mouth while touching her breasts and vagina – behavior which constitutes indecent behavior with a juvenile. See Perkins, supra, evidence that the defendant held the victim down and kissed her on her neck was sufficient to sustain a conviction for indecent behavior with a juvenile; State v. Lyles, 03-141 (La.App. 5 Cir. 9/16/03); 858 So.2d 35, the defendant's action of taking the victim's hand and placing it on his private then kissing the victim and putting his tongue in her mouth was sufficient to support the defendant's conviction for indecent behavior with a juvenile; and State v. Bahm, 490 So.2d 384, 387 (La. App. 5th Cir. 1986), evidence that the defendant exposed his penis to the victim and rubbed her genitals supported a conviction for indecent behavior with a juvenile.[28]

---

[27] Id. at 1214-15.
[28] Id. at 1218.

At the next step of an "actual innocence" analysis, a federal court considers the **new** evidence of actual innocence offered by the habeas petitioner.  Specifically, the United States Supreme Court has explained that, in order to assert a credible claim of actual innocence, a petitioner is required "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful."  Schlup v. Delo, 513 U.S. 298, 324 (1995).

But, here, petitioner has presented no new evidence whatsoever.  Without such evidence, he cannot meet "the threshold requirement" for Perkins to apply, i.e. a showing that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  Perkins, 569 U.S. at 386 (quoting Schlup, 513 U.S. at 329).  Accordingly, Perkins does not aid him.

In summary:  Because petitioner is not entitled to further statutory tolling, and because he has not established that he is eligible for equitable tolling or that the Perkins "actual innocence" exception applies, his federal application for habeas corpus relief had to be filed no later than **July 23, 2020**, in order to be timely.  Because his application was filed no earlier than **January 10, 2021**, it was untimely.

### **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application filed by Simon Shokr seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as untimely.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___3rd___ day of March, 2022.


_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**